Again, good morning, and may it please the Court. I'm Philip Gregory, appearing on behalf of Appellant Debbie Silvia, and I'd like to reserve five minutes for rebuttal, please. The Magistrate Judge here erred in granting summary judgment and in denying Debbie Silvia jury trial on her prevailing wage claims. The brief from Appellee's states in the beginning that this case concerns the sole question of whether Debbie was entitled to prevailing wages for monitoring construction work performed by others. That's not the evidence in this case. The order on summary judgment states that it is not requiring this contractor who did work on a prevailing wage job to pay prevailing wages to an inspector and surveyor, even though Labor Code section 1720, subsection A1, states that construction includes work performed, including inspection and land surveying work. In the decision City of Long Beach v. Department of Industrial Relations, the Court concluded that the prevailing wage law includes inspectors and surveyors among those workers deemed to be employed upon public works. Mr. Gregory, it would be more helpful, I think, if we framed the issue instead of just arguing here because I'm not quite sure I'm following you. What's your point? Certainly. That Ms. Silvia, so under the relocation agreement as well as each subsequent amendment, Ms. Silvia was MCI's inspector representative on the project, as the initial project and the pay prevailing wage for a full-time inspector on this prevailing wage project. So the whole question here that we're considering on appeal is whether the district court correctly found that Ms. Silvia, represented by you apparently, abandoned her as inspector theory claim. And are you saying that the district court was incorrect in finding that Ms. Silvia abandoned her inspector theory claim? And if so, why? Thank you, Your Honor. So to go back in sequence, Ms. Silvia files the second amended complaint. Subsequently, and while discovery was still open, Ms. Silvia serves an expert report that has a different classification for the work that she did. That's the locator theory? Yes. Yes, Your Honor. And you abandoned the inspector theory? And, Your Honor, because the locator classification, not the work she did, but the locator classification, in the expert's opinion, more closely aligned with the work Ms. Silvia was doing. But you agree, or don't you agree, that you abandoned the inspector theory? And that's where the confusion may be, Your Honor. There's the inspector classification, and that's a classification for purposes of the prevailing wage law. It's the building construction inspector and field soles and material tester classification. And instead, the expert said... Your expert? Our expert, yes, Your Honor, said that it's more the work she did, the same work, not applying any different work, that what she did was a locator job. And he said that, and that report was served within the discovery time frame. On the eve of the deadline for discovery? Yes, Your Honor, before discovery closed. And then... Which would have given you enough time, had you chosen, to make amendments to the appropriate documents, to give notice officially to the other side, and to tell the court you needed additional time, based on your expert that apparently you found at the very end, close to the discovery deadline. But you did none of that. If I may, Your Honor, that's incorrect. We amended our interrogatory responses and provided the expert opinion within the discovery. Why didn't you amend your initial disclosures, supplement your discovery responses, or move to amend the complaint after the district court issued its partial summary judgment order? Because discovery had closed, Your Honor, at that point. That point was in January, two months after discovery had closed. At the hearing, I think it was at the partial motion for summary judgment hearing, the court asked you, I thought the whole point, as I said at the outset of the hearing, was that you weren't claiming that the work she did was analogous to the inspector determination. Plaintiff's counsel responded, right, that's correct, Your Honor. If I may, Your Honor, that's the classification issue, not the actual work she was doing. The classification was, as the expert had said, at the close of discovery, and as we supplemented our interrogatory responses. So before the close of discovery, defendants were on notice that we were proceeding under what Your Honor called the locator classification. So they knew that. They took the expert's deposition well before they moved for summary judgment. And the other important point to make, Your Honor, is the motion for partial summary judgment was filed more than a month before discovery had closed. So discovery's still open. The defendants file a motion for summary judgment. We, during the course of discovery, and I'm not going to dispute with Your Honor that it was shortly, several weeks before discovery closed, but after we had obtained additional information in discovery from defendants, and then we had enough information to go to our experts. That's the record, Your Honor. And so we went to our expert because the Verizon MCI, one of the defendant groups, didn't produce documents until September. We deposed the the report from the expert in October, and it was further bolstered by the testimony of Pamela Brown. And so the point I'm trying to make, Your Honor, is it was not the work Debbie Sylvia was doing that changed at all. It was simply the classification that she fell within for purposes of the prevailing wage law. And then what gets lost in the district court's summary judgment order is that for purposes of the partial summary judgment, she denied partial summary judgment on Ms. Sylvia's per diem claim and then throws that claim out without any discussion in her summary judgment order. Thus, Ms. Sylvia lost the per diem claim, which was unrelated to the classification. It was whether or not she was entitled to be paid a per diem, which she asserted she was, and the district court never ruled on for purposes of summary judgment. And that's why the issue is, was the defendant at all harmed by this, what I'm going to call, change in classification? The other issue, and I just want to touch on it briefly, is the issue of the benchmark date where the district court found in the order on summary judgment that there was no evidence of amendments. Those amendments are dealt with at the record at the Fourth Amendment at 932, at 1141. It's cited to our brief in 1049. Mr. Gregory, I just have to, because I want to make sure you have an opportunity to address what concerns at least me, if not the full court. This was a harsh result for your client. I understand that, but it looks like some errors were made along the way here, and they were significant, I mean, to the point where the district court granted summary judgment in favor of the defendants. And a lot of this is because of this new theory at summary judgment that she was entitled to prevailing wages under the category for field surveyor or labor group 3A because she performed the work of utility locator, okay? But here, and I think the point that the district court was making, and did make quite clearly in the order, is that this new locator theory rendered the prior disclosures and certain discovery responses incomplete and inaccurate. And under federal rule of Civil Procedure 26E, Ms. Sylvia, I guess represented by you, was required to supplement or correct her responses in a timely manner once she realized that responses were incomplete or incorrect. That's 26E1A. And it appears from the record that you did not attempt to supplement the responses even after the district court issued a written order identifying and explaining your noncompliance with the rule and leaving her with an opportunity to supplement her responses before summary judgment. So what we're faced with now, what you're faced with now, is the district court precluded Ms. Sylvia from using the new theory under rule 37C, which provides that a party's failure to comply with rule 26E1 results in that party being precluded from using the information to supply evidence on the motion at the hearing and at trial unless the failure was substantially justified or is harmless. And I guess that's the key question that I'm just wanting to know from you. How was this substantially justified? What do you offer as to why your failure here to make the proper disclosures and to do the correct procedures that you were, you know, to follow the correct procedures here, how is that not, how is the district court wrong here? Certainly. And again, unlike the other cases that are cited by the district court, for example, the Oracle case, what occurs here is during the discovery period, plaintiff provided the expert opinion and supplemented her interrogatory responses with the new classification. There was, the issue is, should she have then gone on also to supplement her second amended complaint with a third amended complaint? But she wasn't required, I believe, to supplement her initial disclosures because the defendants had the information, they had the expert opinion, they had the supplemental interrogatory responses within the discovery time frame. And they deposed, timely deposed the expert on the locator classification theory. So the defendants, so that was substantially justified. And under the decision of R.R. Sales, what happened here was an effective dismissal of the complaint. And the district court is required to consider whether the claim noncompliance in that situation involved willfulness, fault, or bad faith. And that there's no evidence at all here of that. In fact, what there is evidence is that all that, is that everything regarding the new classification was made promptly available to defendants after we'd received their discovery, within weeks after we'd received their documents, and even before we'd deposed some of their witnesses. They knew it. And that's why I don't believe there's any finding in here of willfulness, fault, or bad faith. And I believe it was substantially justified because, and I'm out of time, but I believe it was substantially justified because as soon as we got the discovery, we went out and got an expert that said, this is really what this lines up to, the locator theory. And we promptly provided that to the defendants. Thank you. May it please the court, Stephen McCutcheon appearing on behalf of all defendants and respondents. I think the court's questions show that really the issues on appeal are quite simple. Mr. Gregory's tried to make it sound complex, there's a lot of moving parts, but really the issues are, one, did she abandon her inspector claim that was properly before the court below, and did she violate Rule 26, fail to meet her obligations under Rule 37, and perhaps even violate the pleading requirements of Rule 8 with her change to this new theory in the 11th hour. We submit that the district court was correct on all of the rulings that it made. When defendants filed their motion for partial summary judgment, she attempted to avoid summary judgment on the grounds that, well, I'm not really an which determinations govern my claim. When defendants filed their motion for summary judgment, she again, after having noticed that there's a problem with this attempt to shift to a new claim, she again argues, I'm not an inspector, I'm a utility locator. Well, let me just ask, couldn't the disclosure of Mr. Nauru's expert report, which occurred before the close of the expert discovery, have satisfied Ms. Sylvia's Rule 26A obligation, because I guess the additional corrective information was otherwise made known to the other parties? The problem with that theory by plaintiff is that it was still untimely. We've been litigating the case for two, two and a half years. There was a summary judgment motion pending before the court, and the chronology makes it clear that but for the filing of the partial summary judgment motion, this change in theory may have never been smoked out until after the close of the fact discovery. Yeah, but it was within the deadline. We have deadlines, and it was within the deadline, and I guess why weren't the defendants or your clients put on, you know, notice sufficiently of the new theory when the expert report was disclosed? Again, we've been litigating for two, two and a half years over this issue, and contrary to what plaintiff's counsel has indicated, interrogatory responses were never amended. We never received interrogatory responses, and in particular, at the outset of the case, the defendants took the position that Ms. Sylvia, you're not entitled to prevailing wage on any basis whatsoever. Identifying her discovery responses, which specific prevailing wage determination by title and number you base your claim on. She responded with two building construction inspector determinations, one from 2007, one from 2012. That response is at 1437 of the excerpt of record. That was the case that was litigated until summary judgment. That's what guided all of the discovery. That's what guided the depositions. That's what guided the defendants' own disclosures and discovery responses. So, Mr. McCutcheon, we were all district judges at one time. One of us still is. And we get very frustrated sometimes when plaintiff's lawyers are hiding the ball and causing undue delay and causing extra expense. And that clearly occurred here. But what sanction to impose, this is a very severe sanction to Ms. Sylvia, who didn't really do anything wrong. Her lawyer did a lot wrong. And we're seeing some of that in the courtroom today. We're getting frustrated with Mr. Gregory just in this short period of time here. But didn't the district court have options short of actually just dismissing the case? Well, one, I'm not sure that the sanction is as dire as Mr. Gregory explains. They had a valid claim, the inspector claim that they'd been litigating and we'd been defending against that they could have attempted to support, that they could have argued in the briefing and argued as an alternative with their expert report. They chose not to do that. Instead, pivot completely to this new theory. The district court did consider alternatives. They did consider perhaps some sort of a monetary sanction. Did consider the actions of the parties. And I think the district court's also looking at its own impacted calendar. And now I've got a trial date that's going to be perhaps moved and vacated. Yeah, but why couldn't an alternative then to require Ms. Sylvia to pay the attorney's fees caused by the belated new theory? Certainly, this would have avoided the harsh result. Well, the question is, I suppose, would she have been paying that out of pocket up front or would that be attempted to be at the end of the case? What would be the means of payment of that? The court could have considered all of those different options. Again, the primary one that's provided by Rule 37C is initially exclusion of evidence. And the court has discretion to decide based on the conduct of the parties in the disclosure of this information what is the correct result. And I don't think Mr. Gregory and Plaintiff Sylvia have shown that the court's determination that she had not shown that this was harmless, had not shown that it was substantially justified. They've not shown that the court abused its discretion in either of those ways. If we look at the chronology of events, I think it's particularly telling that, again, the original complaint was filed in August of 2015. The case is litigated for two years. Judge Corley encouraged us to file multiple motions for summary judgment to narrow issues and frame the final motion for summary judgment. So the motion for partial summary judgment was filed in October of 2017. And in October, they filed their opposition, shifting to the new theory, saying, again, don't grant partial summary judgment because we're changing our claims. At that point, November 7th, we put them on notice, objecting that this change has not been disclosed and is not permitted. On January 4th, 2018, that's 58 days later we get to the hearing. In the meantime, there's been no motion to amend the complaint, no amended discovery responses, no withdrawal of any prior declarations stating that I'm pursuing inspector claims. On January 8th, at that hearing, I think Mr. Gregory would agree that the court discussed the trouble that it was having. And then on January 8th, throws them a lifeline when she issues her opinion, saying, these are the things that I haven't seen. The defendants then move to file their final motion for summary judgment with none of those things happening, not really knowing, OK, now that they're on notice that they violated the rules, which claims are going to be raised in opposition. So at that point, we filed the motion. 78 days have gone by, no changes. We get to the opposition, February 7th. That's 92 days after they've been put on notice. No changes, no request to amend, no amended discovery responses. We get to the hearing. It's 101 days after they're put on notice that the complaint still is entirely focused on the inspector claims, et cetera. No amended discovery responses. And contrary to what Mr. Gregory says, I don't believe we ever took the deposition of his expert, Mr. Neuro, because we didn't think the testimony was relevant or admissible, ultimately. So there was no purpose in taking his deposition. Instead of a conscious regard for the rules, I think the chronology shows that this failure was a result of a lack of diligence and a disregard for the rules. Their response when pressed by the court was, what we did is we went out, we got the expert, and he determined, no, she's doing located work. And that's my opinion, and that's the opinion we submitted. As to whether there was some reason to wait till the end to take the deposition of Ms. Brown, Pam Brown, that was somebody that they had identified in their complaint as a person with knowledge. There was no reason to wait two, two and a half years to take her deposition. The chronology, again, makes clear that but for these early motions for summary judgment, that this change in theory would have never been identified. I don't want to, unless you have any questions on whether the inspector claim was waived, I think the statement from the court. Yeah, I have a question. Yes, sir. Are we still dealing with this building inspector theory in the case? I don't believe any longer, Your Honor, at the oral argument. Well, first, in the record, they made no effort in the briefing or the record to support the claim, make any effort to tie her duties. It looks like to me they abandoned that at the summary judgment stage. Correct, Your Honor. I believe that would no longer be part of the case. It's been abandoned at an oral argument. Twice the issue came up. It seems to me the district court, unless it's been abandoned, the district court can commit error by not pursuing the claim. At any rate, it's no longer before this case as you see it. Correct. That's been abandoned. That's been waived. Again, as the court questioned earlier, at some point, the issue came up and the court said, I thought the whole point, as I said at the outset of the hearing, was that you weren't claiming that the work she did was analogous to the inspector determination. And the response from Ms. Sylvia was, right, that's correct, Your Honor. So even if we look beyond that, the record itself in the briefing or the evidence submitted by the plaintiff does not put into the record the specific prevailing wage determination that defines the scope of work and the duties of an inspector to say, this is what I did, this is how a reasonable jury, a reasonable trial of fact could find that I performed the duties of an inspector. And indeed, that analysis wasn't even done until we get to the reply briefing in this court. And by that time, it's too late to say, here's what I would have argued, I could have argued, or I should have argued in the court below. But it does look like the locator theory is a viable one. You know, again, the defendants would disagree. Ms. Brown's declaration on summary judgment stated that my client was not hired to perform locating work, that there were other locators that were hired specifically under state law to perform locating work, and that Ms. Sylvia's role was to ensure that construction work did not take place in the areas where the locators had identified MCI's infrastructure to be to keep it safe from harm. So she was not actually doing the locating. If anything, she would be refreshing. But again, that's really not the issue at present. It's, did this new theory get raised in a timely manner? And Your Honor, to the other part of your question earlier, as to fairness, the Supreme Court's decision in Link v. Wabash, I think, is one that's perfectly on point, that parties select their counsel, they work with their counsel on strategy and how they want to proceed, and they're bound to those decisions that they make. And if there is relief, they can also look to their counsel. Nobody likes to make that argument, but that's the reality of it. The committee notes to Rule 37c, I think, are also illustrative here of when the court should exercise its discretion to find that some error was either substantially justified or harmless. And the examples used in the committee notes are sort of inadvertent omissions, where somebody fails to identify a potential witness that the other parties, everybody knows about, or a potential witness that is listed on somebody else's disclosures, or if you have a pro se litigant who is unaware of disclosure rules, and they're put on notice that your evidence will be excluded unless disclosed. But in that situation, once they're on notice, they have to disclose. Well, here we have someone who's represented by counsel. And in these, this seems to me just a case management issue that we're dealing with here. It seems to me, and thinking here, I should have thought before so I could do my own research, but you probably have the case right in front of you, that we have held before that we give a wide discretion to district judges in making their determinations on case management issues. Am I mistaken on that? They do receive wide discretion. It's part of the court's inherent authority to manage their calendar and manage their docket. And we hold that the district judge is in the best position to make those decisions for case management purposes so long as they follow the rules. And correct. But there was never any effort to request that the court exercise its discretion in that manner, such as a motion for leave to amend or motion by the plaintiff to reopen discovery so the parties could address these new claims, a motion to vacate the trial date. There was never a request by the plaintiffs for that exercise of discretion. The other case that I think is important is Yeti by Mollie versus Decker's Outdoor Corp. That's, again, a 37C case that says that these requirements are really self-executing. You don't even have to make an objection for evidence to be automatically excluded and shifting the burden to the party who wants to introduce it to show that the error was substantially justified or harmless. Here, there was never any effort to show that the error was or failure to disclose was substantially justified. There was no declaration, nothing else put into the record. The only item in the record is the statement by plaintiff's counsel that, well, we didn't figure this out until after two years when we retained an expert. And he said, no, we think she's this other type of position. I don't know if the court has any questions on the benchmark date issue. We've got about another half a minute. If there are any further questions, thank you, Your Honor, for your time. Thank you, Mr. McCutcheon. Mr. Gregory, you used all your time, but I'll give you one minute for rebuttal. Your Honor, the district court here in the transcript of March 2018 talks about what could be done to reopen discovery and that that would not be a burdensome process to reopen discovery. The decision cited by counsel, the Yeti by Mali decision, states that evidence may be excluded under Rule 37C1 even if it may weaken a party's case so long as exclusion is less than dismissal. That when it's dismissal, it shifts to a different standard which involves willfulness, fault, or bad faith. And the effect of the district court's decision here was to dismiss rather than, as Your Honor said, to treat this as a case management issue, much like the district court did in the Volterra Semiconductor Court decision. Judge Spiro said, I'm just going to reopen discovery and I'm going to have discovery on this new issue. And with that, I'll submit, Your Honor. Thank you very much. The case of Debbie Silva v. MCI Communications Services is now submitted.
judges: Wallace, Murguia, Lasnik